## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

DENISE WOODS as the Administrator :    No. 4:25-CV-592
of the Estate of                       :
RICHARD WOODS, deceased,     :
               Plaintiff, :
       *v.*                          :
                            :
SUPERINTENDENT         :
BOBBI JO SALAMON,       :
SUPERINTEDENT SCI ROCKVIEW    :
                            :
-and-                            :
                            :
JOHN/JANE DOES 1-20      :
SCI ROCKVIEW PERSONNEL     :
                            :
-and-                            :
                            :
THE PENNSYLVANIA DEPARTMENT :
OF CORRECTIONS,        :
                            :
           Defendants. :

### COMPLAINT AND JURY DEMAND

Plaintiff, Denise Woods, as Administrator of the Estate of Richard Woods ("Mr. Woods"), deceased ("Plaintiff"), by and through her attorneys, O'Hanlon Schwartz, P.C., hereby asserts the following Complaint against Defendants, as follows:

### Parties

1.     Plaintiff, Denise Woods, is Administrator of the Estate of Richard Woods, deceased. Plaintiff is the mother of Mr. Woods. Mr. Woods was at all material times a resident of Centre County, Pennsylvania and died at SCI Rockview on or about April 20, 2023. Plaintiff is a resident of Philadelphia County and a citizen of the Commonwealth of Pennsylvania and the United States of America.

1

2.      Superintendent Bobbi Jo Salamon ("Defendant Salamon") was at all times relevant to this action an agent of SCI Rockview and the Commonwealth of Pennsylvania Department of Corrections and was and is the Superintendent for SCI Rockview.  She is being sued in her individual capacity as Superintendent of SCI Rockview.  To the extent applicable to any claim, this Defendant engaged in willful misconduct and acted outside the scope of employment and this is borne out in the allegations.

3.      Defendants John/Jane Does 1-20 are personnel or outsourced personnel that worked at SCI Rockview proximate to Mr. Woods' death on or about April 20, 2023 ("John/Jane Doe Defendants").[1]  Nicki Paul, Assistant to the Superintendent Defendant Salamon, has refused to release non-medical records and has stated that records will be released through discovery.  In addition, only partial medical records have been released.  Defendants John/Jane Does 1-20 include prison personnel employed at the Restorative Housing Unit ("RHU") and general population as well as other personnel involved in determining cause of death.  To the extent applicable to any claim, these Defendants engaged in willful misconduct and acted outside the scope of employment and this is borne out in the allegations.

4.      The Pennsylvania Department of Corrections ("DOC" or "Defendant DOC") runs state prisons in the Commonwealth of Pennsylvania, including SCI Rockview, and is or was the employer of all individual Defendants.

**Jurisdiction**

5.      This action is brought pursuant to 42 U.S.C. § 1983. Jurisdiction is based upon 28 United States Code 1331, 1341 ( 1 ), (3) and (4), and l343(a)(3), and 1343(a)(4). Plaintiff further

---

[1] Defendant Salamon and the John/Jane Doe Defendants are, collectively, the "Individual Defendants."

invokes the court's supplemental jurisdiction under 28 U.S.C. § 1376(a) to hear and decide claims under state law.

## Facts

6.       Prior to his death, Mr. Woods was incarcerated at SCI Rockview.

7.       In or around April of 2023, Mr. Woods complained to family members regarding being assaulted by a fellow inmate or inmates, understood to be members of the crips street gang.

8.       As a result of Mr. Woods being in an altercation with another inmate or inmates, Mr. Woods was moved to the RHU.

9.       Access to the RHU is limited to inmates assigned to the RHU and access between cells is extremely limited and only permitted under limited circumstances by guards.

10.      On the date of his death, Mr. Woods was on the RHU and in solitary confinement. This is despite Defendant Salamon's office initially purposefully and falsely informing Mr. Woods' family that Mr. Woods was not on the RHU at the time of his death.

11.      Mr. Woods' alleged and official cause of death is suicide by hanging.  However, it is wholly unexplained as to why there were extensive injuries and bruising on all other parts of Mr. Woods' body when his family viewed and photographed the body at the morgue.  In addition, the sheet alleged to have been around Mr. Woods' neck at the time of his death was only tied to a bed, meaning that Mr. Woods had committed suicide using this sheet, his feet would have touched the ground,  making hanging by suicide nearly impossible.

12.      Plaintiff believes that the John/Jane Doe Defendants caused or allowed to be caused to Mr. Woods significant bodily injuries when Plaintiff was in the RHU which, ultimately, led and/or contributed to Mr. Woods' death.

3

13.    In the alternative, the conditions imposed on incarcerated persons housed in solitary confinement are significantly harsher than those imposed on those in the general prison population and this led to Mr. Woods' death because all individual Defendants were aware of Mr. Woods' history of depression, prescribed mental health medication, and a prior suicide attempt and Mr. Woods was still placed in the RHU when all individual Defendants knew of these risks as well as three other recent deaths in cells at SCI Rockview.

14.    As recognized in medical and psychological literature, solitary confinement causes serious physical and psychological harm to humans. Mr. Woods faced all of these risks and this was known to all individual Defendants.

15.    People in solitary confinement are deprived of meaningful social contact and caring human touch, both of which are fundamental human needs.

16.    People who have been held in solitary confinement are at increased risk of decompensating and of experiencing psychotic episodes.

17.    Solitary confinement has been shown to cause and exacerbate mental illness such as depression and anxiety and can cause severe mental deterioration and decreased cognitive functioning.

18.    People who are subjected to solitary confinement often experience extreme feelings of hopelessness, despair, rage, and anger.

19.    Solitary confinement increases the risk of suicide and suicide attempts.

20.    Solitary confinement has also been linked to adverse physical effects, including skin conditions such as rashes and dry, flaky skin, Vitamin D deficiency due to lack of natural light, and hypertension.

21.     Solitary confinement can also exacerbate musculoskeletal pain and cause fluctuations in body weight and loss of muscle mass.

22.     Chronic sleep disturbance and the adverse health impacts associated with it are another common effect of solitary confinement.

23.     These physical effects can be long-lasting and increase mortality risk even after a person is released from prison.

24.     Recognition of the severe and lasting impacts of solitary confinement is not limited to researchers and scientists. Over the past decade, courts, non-governmental organizations, legislatures, and voters have expressed concern about and understanding of the many ways solitary confinement harms individuals as well as society.

25.     Several jurisdictions, including Allegheny County, Pennsylvania, have passed laws banning or restricting the use of solitary confinement in their jails and prisons.

26.     In 2017, the U.S Court of Appeals for the Third Circuit "acknowledge[d] the robust body of legal and scientific authority recognizing the devastating mental health consequences caused by long-term isolation in solitary confinement."[2]

27.     The Third Circuit "observed a growing consensus with roots going back a century—that [solitary confinement] conditions … can cause severe and traumatic psychological damage, including anxiety, panic, paranoia, depression, post-traumatic stress disorder, psychosis, and even a disintegration of the basic sense of self identity," as well as physical harm, including suicide and self-mutilation.[3]

---

[2] *Palakovic v. Wetzel*, 854 F.3d 209, 225 (3d Cir. 2017).

[3] *Id.* at 225–26 (citing *Williams v. Sec'y Pa. Dep't of Corr.*, 848 F.3d 549, 566–68 (3d Cir. 2017)).

5

28.     DOC officials, including all of the individual Defendants, were or should have been aware of the psychological and physical dangers of solitary confinement and prolonged isolation, in general, as well as the even greater risk these conditions pose for people with serious mental illness.

29.     John Wetzel, former Secretary of the Department of Corrections, "knows well the risks inherent in prolonged isolation … [and has] stated he is familiar with the [scholarly literature] which sets forth at length the harmful effects of solitary confinement."[4]

30.     Mr. Wetzel is a past president of the Association of State Correctional Administrators, which published reports about efforts to limit solitary confinement during his tenure.[5]

31.     Steven Glunt, a former DOC Superintendent and Deputy Secretary and the DOC's representative in a lawsuit challenging the DOC's use of solitary confinement, has acknowledged that "if you put [people] in an environment where there's not an opportunity to be interactive, stimulate their thought processes, to grow … they start to decompensate. And then that increases their risk of self-harm."[6]

32.     In 2014, the Civil Rights Division of the U.S. Department of Justice completed an investigation of the DOC's use of solitary confinement for prisoners with serious mental illness and/or intellectual disabilities and issued findings that the DOC's practices violated those prisoners' constitutional rights and their rights under Title II of the ADA.

33.     Throughout the DOJ's investigation, DOC officials, including Defendant Salamon, expressed an understanding of the serious harm caused to prisoners by solitary confinement.

---

[4] *Johnson v. Wetzel*, 209 F. Supp. 3d 766, 779 (M.D. Pa. 2016).
[5] *Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 446 (3d Cir. 2020).
[6] *Id.* at 445.

34.    Indeed, "the substantial risks of prolonged solitary confinement are obvious, longstanding, pervasive, well-documented, [and] expressly noted by [DOC] officials in the past."[7]

35.    It would "defy logic" to suggest that any corrections professionals could be unaware of the potential harm that the lack of human interaction in solitary confinement can cause.[8]

36.    Four inmates, including Mr. Woods, died at SCI Rockview, two (Robert D. Williams and Andrew Yuhas) in March of 2023 and one, Jamie Houseknecht, earlier in April of 2023. The deaths were also alleged to have been suicides. Defendant Salamon was aware of this potential for suicide death but personally and purposefully continued to house inmates such as Mr. Woods in solitary confinement in the RHU, knowing the effects on inmates housed in such conditions.

### COUNT ONE:  Eighth Amendment
### Plaintiff v. Individual Defendants

37.    Plaintiff hereby incorporates the allegations contained in paragraphs 1 through 36 of her Complaint as if the same were set forth at length herein.

38.    The John/Jane Doe Defendants were deliberately indifferent to Mr. Woods and thereby violated Mr. Woods' right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution.  In particular, the John/Jane Doe Defendants knowingly subjected Mr. Woods to a substantial risk of physical harm, unnecessary pain, and death by either engaging in malicious physical harm directly to Mr. Woods and/or allowing others, including inmates, to do same.  To wit, the John/Jane Doe Defendants either working on the RHU or in general population attacked Mr. Woods and/or allowed inmates to attack Mr. Woods who

---

[7] *Porter v. Pa. Dep't of Corr.*, 974 F.3d at 445.
[8] *See Porter v. Clarke*, 923 F.3d 348, 361 (4th Cir. 2019) (citations omitted).

were known to be members of the crips street gang that had recently been involved in altercation with Mr. Woods leading to Mr. Woods being moved to the RHU.

39.     There was deliberate indifference by the John/Jane Doe Defendants by both subjecting Mr. Woods to serious harm and death and/or by allowing other inmates to do same.

40.     As a direct result of the actions and inactions of the Individual Defendants, Mr. Woods suffered the harms set forth above, including beating and hanging and ultimately death.

41.     In addition, the John/Jane Doe Defendants, acting with the direct approval of Defendant Salamon, placed Mr. Woods on the RHU while knowing that Mr. Woods had suffered a recent traumatic attack and had a history of mental health issues, including depression.

42.     The John/Jane Doe Defendants, acting with the direct approval of Defendant Salamon, placed Mr. Woods in the RHU knowing that several other prisoners had recently been alleged to have committed suicide in their cells.

43.     The John/Jane Doe Defendants and Defendant Salamon knew of the potential harm to Mr. Woods but allowed Mr. Woods to be placed in solitary confinement in the RHU thereby exacerbating known prior mental health issues and, ultimately, leading to the alleged suicide of Mr. Woods.

44.     The Individual Defendants were aware that Plaintiff was medicated for mental health issues and had a past suicide attempt because this is documented by Dr. Jeanne Rinehouse on December 7, 2022 and there were subsequent telehealth mental health evaluations.

## COUNT TWO
## Plaintiff v. Individual Defendants 42 U.S.C. §1983 Civil Rights
## Conspiracy

45.     Plaintiff hereby incorporates the allegations contained in paragraphs 1 through 44 of her Complaint as if the same were set forth at length herein.

8

46.    The Individual Defendants, acting in concert and conspiracy, committed acts in violation of Mr. Woods' constitutional rights. The Individual Defendants made statements among themselves and others in order to conceal their unlawful and unconstitutional conduct and in an attempt to deny Mr. Woods' estate access to the courts and to due process and to cover up the wrongful cruel and unusual punishment to which Mr. Woods was submitted and to cover up the deliberate indifference which was shown to Mr. Woods.

47.    The Individual Defendants performed overt acts in furtherance of the conspiracy to either cover up the cause of death or the degree of deliberate indifference in relation to Mr. Woods' mental health treatment that made RHU housing wholly inappropriate.  This conspiracy is continuing because Defendant Salamon refuses to release all of Mr. Woods' DOC records in an ongoing attempt to conceal and cover up the nature of Mr. Woods' death.

48.    As a result of the above actions, Plaintiff suffered the damages as set forth in this Complaint.

**COUNT THREE**
**Plaintiff v. All Defendants**
**State Law Negligence Claims**

49.    Plaintiff hereby incorporates the allegations contained in paragraphs 1 through 48 of her Complaint as if the same were set forth at length herein.

50.    All Defendants had a duty to comply with generally accepted standards of care in their treatment of Mr. Woods and this means that all Defendants engaged in willful misconduct and acted outside of the scope of their usual employment.

51.    All Defendants violated duty of care to Mr. Woods by failing to ensure that a person such as Mr. Woods with his mental health history was not placed in the RHU.

52.     All Defendants violated their duty of care to Plaintiff and this was a direct and proximate cause and a substantial factor in bringing about Plaintiff's damages outlined above, and, as a result, all Defendants are liable to Plaintiff.

53.     The Individual Defendants were acting as agents, servants, and/or employees of the DOC, and under the direct control and supervision of Defendant DOC and Defendant DOC is liable to Plaintiff on the basis of *respondeat superior* liability.

### COUNT FIVE
### Plaintiff v. All Defendants
### <u>Wrongful Death</u>

54.     Plaintiff hereby incorporates by reference the allegations contain in paragraphs 1 through 53 of her Complaint as if the same were set forth in full herein.

55.     As a result of the aforesaid negligent acts and/or omissions of Defendants resulting in Mr. Woods's death, Mr. Woods's survivors have suffered damages for pecuniary loss including but not limited to the following:

        a.     funeral, burial and estate administrative expenses;

        b.     medical expenses; and

        c.     such other pecuniary losses recoverable under the Wrongful Death Act and applicable Pennsylvania law.

56.     As a result of the aforesaid negligent acts and/or omissions of Defendants resulting in Mr. Woods's death, Mr. Woods's survivors have suffered, and will continue to suffer for an indefinite time in the future, and claim damages for losses including but not limited to the following:

        a.     loss of the pecuniary value of the services, society, comfort, companionship, maintenance, guidance, tutelage, moral upbringing, protection and enjoyment

which Mr. Woods would have provided for the remainder of Mr. Woods's natural life; and

b.      such other pecuniary contributions the survivors could have expected to receive from Mr. Woods and were caused to lose as a direct and proximate result of Defendants' negligence and carelessness; and

c.      such other losses recoverable under applicable Pennsylvania law.

57.      On behalf of Estate of Richard Woods, Plaintiff claims damages for the monetary support Mr. Woods would have provided to his survivors during his lifetime.

## COUNT SIX
### Plaintiff v. All Defendants
### Survival Action

58.      Plaintiff hereby incorporates by reference the allegations contain in paragraphs 1 through 57 of her Complaint, as if the same were set forth in full herein.

59.      Plaintiff claims damages for the pain and mental suffering undergone by Mr. Woods prior to his death, and the loss of earning capacity suffered by Mr. Woods from the time of his injury until such time as he probably would have lived had he not died as a result of the Defendants' negligence as described above.

60.      Plaintiff brings this action on behalf of the Estate of Richard Woods, deceased, pursuant to the Pennsylvania Survival Act, 42 Pa.C.S.A. Section 8302 and claims all damages encompassed thereby on behalf of said Estate.

## REQUESTED RELIEF

Wherefore, Plaintiff respectfully requests:

1.     Compensatory damages;

2.     Punitive damages against the individual Defendants and Defendant DOC, where applicable, because the actions were wanton, reckless, and done with extreme indifference especially given Mr. Woods' history and the other recent deaths at SCI Rockview;

3.     Reasonable attorneys' fees and costs;

4.     Such other and further relief as may appear just and appropriate.

5.     Plaintiff hereby demands a jury trial as to each count and each Defendant.

Respectfully submitted,

**O'HANLON SCHWARTZ, P.C.**

STEPHEN T. O'HANLON, ESQUIRE

DATE:  April 1, 2025

**O'HANLON SCHWARTZ, P.C.**
BY:  Stephen T. O'Hanlon, Esquire (PA Bar # 208428)
        Israel A. Schwartz, Esquire (PA Bar # 327623)
*Attorneys for Plaintiff*
2 Penn Center, Suite 1410
1500 John F. Kennedy Boulevard
Philadelphia, PA 19102
Tel:  (267) 546-9066
Fax: (215) 563-6617
steve@ohanlonschwartz.com
izzy@ohanlonschwartz.com