# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| DENISE WOODS, as the Administrator of the Estate of Richard Woods, deceased, | No. 4:25-CV-00592 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| BOBBI JO SALAMON, Superintendent SCI-Rockview, LAUREL R. HARRY, Secretary Pennsylvania Department of Corrections, & JOHN/JANE DOES 1-10, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

### JUNE 26, 2026

**BACKGROUND:**

Plaintiff Denise Woods's son, Richard Woods, committed suicide while incarcerated at State Correctional Institution ("SCI") Rockview. Plaintiff, acting as the Administrator of Mr. Woods's Estate, brought an action in this Court to recover from Pennsylvania Department of Corrections ("DOC") personnel for his death. The Court previously dismissed most of the claims asserted in this suit,[1] but permitted Plaintiff to amend her complaint. She did so,[2] and the named Defendants,

---

[1]   Doc. 15 (Mem. Op.).
[2]   Doc. 17 (2d Am. Compl.).

Superintendent of SCI Rockview Bobbi Jo Salamon and DOC Secretary Laurel R. Harry, again moved for dismissal.[3] On review of the Second Amended Complaint ("SAC") and the parties' submissions, the Court grants the motion to dismiss. Plaintiff will be given one final opportunity to amend her complaint, but is warned that any future dismissals will be with prejudice.

The Court writes for the benefit of the parties and therefore omits a factual recitation. The SAC's allegations have not significantly changed the factual circumstances set forth in the Court's prior opinion.[4] Factual allegations will be developed in the analysis where relevant.

**ANALYSIS:**[5]

Defendants move for dismissal of Count I, which asserts a cause of action for an Eighth Amendment violation against all Defendants.[6] Counts III and IV assert derivative causes of action for wrongful death and survival, which "rise or fall" with the viability of Count I.[7]

---

[3]   Doc. 21 (Mot.).
[4]   Doc. 15 at 3-4; *Woods v. Salamon*, No. 4:25-CV-0592, 2025 WL 3452450, at *1-2 (M.D. Pa. Dec. 1, 2025)
[5]   On a Rule 12(b)(6) motion to dismiss, the Court must: "First, take note of the elements a plaintiff must plead to state a claim. Second, identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011)) (internal citations and alterations omitted).
[6]   *See* Doc. 22 (Defs.' Brief).
[7]   *Duvall v. Hustler*, 447 F. Supp. 3d 311, 338 (E.D. Pa. 2020) (quoting *Sullivan v. Warminster Township*, 765 F. Supp. 2d 687, 707 (E.D. Pa. 2011)); *Masciulli v. Imperial Sec. Servs., Inc.*,

Plaintiff appears to assert two possible theories for her Eighth Amendment claim. She presents arguments for a recovery based on Mr. Woods's vulnerability to suicide[8] and the general conditions of confinement, including the use of solitary confinement and training thereon, at SCI Rockview.[9]

Among other elements, both theories require a plaintiff to demonstrate that the prison officials had some knowledge of the decedent's mental health issues. On a vulnerability to suicide claim, the plaintiff must show "that the prison official knew or should have known of the individual's particular vulnerability," which means "a 'strong likelihood, rather than a mere possibility,' that a suicide would be attempted."[10] A conditions of confinement claim sets a slightly lower standard, requiring a showing that prison officials "had (or should have had) knowledge of [the inmate's mental health] diagnoses."[11]

In establishing these knowledge elements, binding Third Circuit precedent teaches that merely stating that the defendants "knew" or were "aware" of the decedent's mental health issues is "a conclusory recitation of the knowledge element of the underlying cause of action, and cannot meet the plaintiff's pleading burden

---

No. 24-CV-4130, 2026 WL 1395933, at *3 (E.D. Pa. May 19, 2026) (citing *Bright v. Westmoreland Cnty.*, 380 F.3d 729, 741 (3d Cir. 2004)).

[8] *See Colburn v. Upper Darby Twp.*, 946 F.2d 1017 (3d Cir. 1991); *Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314 (3d Cir. 2005).

[9] *See* Doc. 23 (Pl.'s Brief) at 7-8 (citing *Palakovic*, 854 F.3d 209).

[10] *Palakovic*, 854 F.3d at 223-24.

[11] *Id.* at 225-27 (discussing whether "conditions . . . were inhumane . . . *in light of his mental illness*"); *id.* (describing in detail that "the prison diagnosed [inmate] with an array of serious mental health issues").

without additional facts showing (or allowing the reasonable inference of) knowledge or the responsibility to know."[12] The SAC falls short of this standard.

Plaintiff alleges that Mr. Woods previously attempted suicide and had a history of depression.[13] And she repeatedly alleges in a conclusory fashion that the Defendants "knew" or "were aware" of these facts.[14] But nowhere does she include "additional facts showing (or allowing the reasonable inference of) knowledge or the responsibility to know."[15] Mr. Woods's previous suicide attempt occurred "prior to his incarceration at SCI Rockview," so prison officials' knowledge of that attempt cannot be inferred.[16] Plaintiff's only other non-conclusory knowledge allegation states that "Defendant Salamon and her subordinates were aware that Plaintiff was medicated for mental health issues and had a past suicide attempt because this is documented by Dr. Jeanne Rinehouse on December 7, 2022 and there were subsequent telehealth mental health evaluations."[17] But the SAC does not explain who Dr. Rinehouse is, whether she had any relationship with SCI Rockview or DOC, whether Mr. Woods was incarcerated at the time of Dr. Rinehouse's evaluation, who conducted the "subsequent telehealth mental health evaluations," what actual

---

[12]  *Mullin v. Balicki*, 875 F.3d 140, 149 n.11 (3d Cir. 2017) (citing *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013)).

[13]  Doc. 17 ¶ 13.

[14]  *Id.* ¶¶ 14, 22-23, 30-31, 61, 63; *see id.* ¶¶ 28, 56, 62, 66-70 (describing issue of placing "inmates such as Mr. Woods in solitary confinement").

[15]  *Mullin*, 875 F.3d at 149 n.11.

[16]  Doc. 17 ¶ 13.

[17]  *Id.* ¶ 64.

diagnoses were made in those evaluations, or whether any of these evaluations were shared with DOC personnel. As far as the Court can tell, then, Mr. Woods attempted suicide before he was incarcerated and told a doctor that he had done so approximately four-and-a-half months before committing suicide. That is not sufficient to support an inference of DOC personnel's knowledge.

Plaintiff's allegations of knowledge stand in stark contrast to those in *Palakovic v. Wetzel*, on which she heavily relies. In *Palakovic*, the decedent-inmate's family alleged that:

> Brandon *informed SCI Camp Hill mental health staff* that he had attempted suicide in the past and had engaged in self-harm as recently as August 2010. He also *advised staff* that he experienced periodic thoughts of self-harm and suicide, and that he had made plans about how to kill himself. Brandon was diagnosed with a number of serious mental disorders, including alcohol dependence, anti-social personality disorder, and impulse control disorder. He was identified as a "suicide behavior risk," and was classified as "Stability Rating D," signifying "a substantial disturbance of thought or mood which significantly impairs judgment, behavior, capacity to recognize reality, or cope with the ordinary demands of life." It is the lowest stability rating given a prisoner in the Pennsylvania Department of Corrections (DOC) system. He was, accordingly, placed on the prison mental health roster.[18]

Moreover, when he was transferred to SCI Cresson, "*he reported* feeling depressed, exhibited signs of depression, *and acknowledged* suicidal thoughts and a wish to die."[19] Based on these allegations, the Third Circuit had no difficulty determining that "[t]he original complaint adequately alleged that the prison diagnosed Brandon

---

[18]   854 F.3d at 216 (emphasis added).
[19]   *Id.* (emphasis added).

with an array of serious mental health issues and placed him on a mental health roster, making it quite reasonable to infer that prison officials had (or should have had) knowledge of those diagnoses."[20] In contrast, here, where no factual illustrations connect Mr. Woods's mental health difficulties to DOC personnel, inferring knowledge is not reasonable.

While the SAC falls short of pleading the knowledge element, given the likelihood that slightly more factual detail would meet the pleading standard, the Court will permit Plaintiff one final attempt to amend her complaint to specify any additional facts like those described above that would tend to show that SCI Rockview personnel knew of Mr. Woods's suicide attempt and mental health issues. However, should a Third Amended Complaint prove factually deficient, the Court will dismiss this matter with prejudice.[21]

The Court also takes this opportunity to note that the SAC contains allegations that are immaterial to any pending claims, confusing, and unnecessarily scandalous, and should therefore not be included in a subsequent complaint unless additional facts are offered to render these allegations relevant.[22]

Specifically, Plaintiff apparently believes that Mr. Woods may not have committed suicide, and was instead murdered either by inmates whose actions were

---

[20]    *Id.* at 226.
[21]    *See Holmes v. Gates*, 403 F. App'x 670, 674 (3d Cir. 2010).
[22]    *See* Fed. R. Civ. P. 12(f).

facilitated by prison staff, or by the prison staff themselves.[23] The facts alleged to support this theory consist of: the presence of "extensive injuries and bruising on all other parts of Mr. Woods's body when his family viewed and photographed the body at the morgue," and that "the sheet alleged to have been around Mr. Woods's neck at the time of his death was only tied to a bed [so] his feet would have touched the ground, making hanging by suicide [sic] nearly impossible."[24] Plaintiff also includes other facts apparently suggestive of a cover-up, including that "Salamon's office initially purposefully and falsely inform[ed] Mr. Woods's family that Mr. Woods was not on the RHU at the time of his death," and that some records are not being released to Mr. Woods's family.[25] These allegations are unhelpful and should be removed for several reasons.

First, to the extent Plaintiff is attempting to allege an Eighth Amendment claim for an intentional killing,[26] her facts are insufficient. The fact of bruising on Mr. Woods's body does not reasonably support an inference that prison staff facilitated or themselves beat Mr. Woods to death. Instead, those injuries are entirely consistent with "an obvious alternative explanation" that is apparent from the face of the SAC:[27] Mr. Woods was moved to solitary confinement "as a result of . . . being

---

[23]  *See* Doc. 17 ¶¶ 4, 20, 58-60 (alleging that "John/Jane Does either working on the RHU or in general population attacked Mr. Woods and/or allowed inmates to attack Mr. Woods").

[24]  *Id.* ¶ 19.

[25]  *Id.* ¶¶ 4, 18.

[26]  *See Whitley v. Albers*, 475 U.S. 312, 319 (1986).

[27]  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564-70 (2007) (dismissing complaint when factual allegations were merely consistent with conspiracy but also explained by innocent conduct).

in an altercation with another inmate or inmates," and had recently "complained to family members regarding being assaulted by a fellow inmate or inmates."[28] And the Court draws on its own experience and common sense to reject as unreasonable the inference that the sheet being tied to the bed suggests a murder.[29] That is one of the most common methods of committing suicide in a prison,[30] so, though tragic, it is not a sufficient basis to allow a case to proceed to discovery on a theory of murder. The prison's incorrect statement about Mr. Woods's location and caginess about documents can support many inferences, but murder is not among the slate of reasonable choices in the absence of substantial evidence of such conduct.

Second, these points may simply be holdovers from the First Amended Complaint, in which Plaintiff pursued a theory that Salamon was liable for a civil rights conspiracy to cover up the cause of Mr. Woods's death.[31] But that count was dismissed[32] and not reasserted.[33] So, if they simply were not removed, these

---

[28]  Doc. 17 ¶¶ 15-16.
[29]  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).
[30]  *See, e.g.*, *Denman v. MHM Corr. Servs., LLC*, No. 1:23-CV-1918, 2026 WL 833272, at *3 (M.D. Pa. Mar. 26, 2026); *McGarry v. Yeager*, No. 1:24-CV-1829, 2025 WL 1311914, at *3 (M.D. Pa. May 6, 2025); *Sparkman v. Potter Cnty.*, No. 4:24-CV-1338, 2025 WL 260314, at *3 (M.D. Pa. Jan. 21, 2025); *Kapp v. Wetzel*, No. 16-CV-1380, 2017 WL 1927731, at *2 (W.D. Pa. May 10, 2017); *Hearst v. Mason*, No. 1:11-CV-0304, 2014 WL 1203269, at *1 (W.D. Pa. Mar. 24, 2014);
[31]  *See* Doc. 8 ¶¶ 45-48.
[32]  Doc. 15 at 8.
[33]  *See generally* Doc. 17.

allegations are immaterial matter that add the scandalous suggestion that SCI Rockview staff murdered an inmate, and should therefore be stricken.[34]

This is not to say that Plaintiff cannot proceed on a murder theory. Plaintiffs are perfectly free to plead "2 or more statements of a claim . . . alternatively or hypothetically," "regardless of consistency."[35] But she must offer more factual support for this theory if it is to survive dismissal. Furthermore, the Court would appreciate a clearer demarcation of the two alternative theories in terms of their supporting facts and legal causes of action in any further amended complaint.

Finally, the Court notes that this decision does not address Plaintiff's claims against the various Doe Defendants in this matter, given that counsel for Salamon and Harry disclaims any representation of the Doe Defendants.[36] However, all Doe Defendants are allegedly employees of SCI Rockview or DOC.[37] To speed identification of the Does and therefore resolution of this matter, the Court authorizes Plaintiff to take <u>very limited</u> written discovery from Defendants[38] to

---

[34] Fed. R. Civ. P. 12(f).

[35] Fed. R. Civ. P. 8(d)(2)-(3).

[36] Doc. 22 at 2 n.1.

[37] Doc. 17 ¶ 4.

[38] The Court recognizes that Salamon and Harry are sued in their individual capacities, but they are employees of the Commonwealth of Pennsylvania being sued for conduct in their professional positions and represented by the Attorney General, and they should be able to facilitate production of this information.

determine the identities of the unnamed individuals described in paragraph 4 of the SAC.[39]

**THEREFORE**, **IT IS HEREBY ORDERED** that:

1. Salamon and Harry's motion to dismiss (Doc. 21) is **GRANTED**;

2. Counts I, III, and IV are **DISMISSED** as to Salamon and Harry;

3. Plaintiff may **SERVE** no more than five (5) written interrogatories on Salamon and Harry collectively for the sole purpose of identifying the John and Jane Doe Defendants as described in paragraph 4 of the SAC (Doc. 17) by **NO LATER** than seven (7) days from the date of this Memorandum and Order;

4. Salamon and Harry shall respond to the written interrogatories by **NO LATER** than seven (7) days from the date of service; and

5. Plaintiff shall **FILE** a Third Amended Complaint **NO LATER** than twenty-eight (28) days from the date of this Memorandum Opinion and Order.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[39]   *See Kennedy v. PrimeCare, Inc.*, No. 1:24-CV-0841, 2024 WL 4554779, at *6 (M.D. Pa. Oct. 23, 2024).